IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEBRA RAPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10CV377 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Debra Raper, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment on the pleadings (Docket Entries 10 and 13), and the administrative record has been certified to the Court for review. Plaintiff's attorney, Joel W. Davis, has also filed a motion to withdraw appearance as counsel. (Docket Entry 15.)

For reasons discussed below, it is recommended that the Commissioner's decision be affirmed, that Plaintiff's motion for judgment on the pleadings be denied, that Defendant's motion for judgment on the pleadings be granted, and that Attorney Davis' motion to withdraw appearance as counsel be granted.

## PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB on October 10, 2006, alleging a disability onset date of April 30, 2006. (Tr. 127-31.)[1] The application was denied initially and upon reconsideration. (Tr. 67-70, 78-86.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 87-88.) Present at the hearing, held on April 9, 2009, were Plaintiff, her attorney, and a vocational expert ("VE"). (Tr. 17, 29.) The ALJ determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 23.) On March 11, 2010 the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-3.)

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since April 30, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: asthma, sinusitis and migraine headaches (20 CFR 404.1520 (c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) except that she can occasionally climb. She is restricted from prolonged exposure to concentrations of air borne pollutants. She is

---

[1] Transcript citations refer to the administrative record.

also restricted from work at unprotected heights or in the presence of hazardous machinery or equipment.

(Tr. 19-23.)

In light of the above, including the findings regarding Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff was able to perform her past relevant work as an administrative assistant and telemarketer. (Tr. 23.) Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from April 30, 2006, through the date of his decision on June 12, 2009. (Tr. 23.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hines*, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a

3

verdict were the case before a jury, then there is substantial evidence." *Hunter*, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." *Mastro*, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." *Id.* at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" *id.* (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Id.* "These regulations establish a

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." *Craig*, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." *Id.* (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r of the Social Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th 1999).[3] A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." *Mastro*, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." *Id.* at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." *Hunter*, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." *Hines*, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall*, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*,

5

"perform past relevant work"; if so, the claimant does not qualify as disabled. *Id.* at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall*, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. *Hines*, 453 F.3d at 567.[5]

### Assignments of Error

In the present case, the ALJ found that Plaintiff, who was not working, met her burden at step one of the sequential evaluation process ("SEP"). (Tr. 19.) At step two, he further determined that Plaintiff suffered from three severe impairments, asthma, sinusitis and migraine headaches. (*Id.*) The ALJ found at the third step that these impairments limited Plaintiff to light work, except that she had the ability to occasionally climb. (Tr. 20.) The ALJ also found that Plaintiff was restricted from prolonged exposure to concentrations of airborne pollutants, from working at unprotected heights, and from working in the presence of hazardous machinery or equipment. (*Id.*) The ALJ then ultimately concluded at step four, based on the VE's testimony, that Plaintiff could perform her past relevant jobs as an administrative assistant and a telemarketer. (Tr. 23.)

---

pain)." *Hines*, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. *See, e.g.*, *Hunter*, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Plaintiff argues, however, that substantial evidence fails to support the Commissioner's findings and/or that the ALJ incorrectly applied the law in three instances. Specifically, Plaintiff first contends the ALJ did not properly evaluate, weigh, and address the medical opinions of one of Plaintiff's treating physicians, Dr. Stephen Fry. (Docket Entry 11 at 3.) Second, Plaintiff contends that the RFC assessment is unsupported by substantial evidence. (*Id.*) Finally, Plaintiff contends that the ALJ failed his duty under Social Security Ruling 82-62, *A Disability Claimant's Capacity to do Past Relevant Word, in General* ("SSR 82-62"), to develop the demands of Plaintiff's past work. (*Id.* citing SSR 82-62.) Defendant contends otherwise and urges that the ALJ applied the correct legal standard and that substantial evidence supports the determination of no disability. The Court, therefore, will address each of Plaintiff's arguments.

**1. The ALJ Applied the Substance of the Treating Physician Rule.**

Plaintiff first claims that the ALJ erred by ignoring the opinions given by her primary care physician from 2002 until the present, Dr. Fry, without considering the necessary regulatory factors, and without articulating good reasons for doing so. (*See* Docket Entry 11 at 4-6.) These contentions essentially dispute the ALJ's application of 20 C.F.R. § 404.1527(d)(2), better known as the "treating physician rule."[6] The rule generally requires an ALJ to give more weight to the opinion of a treating source, because it is more likely to:

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

---

[6] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action precede this nominal regulatory change, this Opinion and Recommendation will make use of the pre-March 26, 2012 citations when referencing the treating physician rule.

7

20 C.F.R. § 404.1527(d)(2).[7] However, the rule also recognizes that not all treating sources are created equal. Thus, an ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro*, 270 F.3d at 178. Moreover, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(e).

After reviewing the record, including the decision of the ALJ, it is clear that the ALJ correctly applied the treating physician rule. Here, after citing directly to the treating physician rule set forth in

---

[7] Social Security Ruling 96–2p provides that "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling 96-2p, *Titles II and XVI: Giving Controlling Weight to Treating Sources Medical Opinions*. However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." *Id.* Social Security Ruling 96-5p provides further that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." Social Security Ruling 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner.* However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

20 C.F.R. § 404.1527(d), the ALJ noted that "[a] treating physician's medical opinion of the nature and severity of a claimant's impairments is given controlling weight if it is well supported by the evidence." (Tr. 22.) The ALJ then declined to give Dr. Fry's opinion controlling weight, or even great weight, according it instead "little weight." (*Id.*) An ALJ must give "good reasons" for discounting a treating physician's opinion by applying the factors set out above. *See* 20 C.F.R. § 404.1527(d)(2). To that end, the ALJ thoroughly discussed Dr. Fry's April 25, 2007 opinion stating that Plaintiff was "disabled." (Tr. 22, 442-46.) The ALJ concluded that "Dr. Fry's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other reports that indicate that the claimant had significant improvement with medication." (Tr. 22.)

The record supports the ALJ's conclusion. Substantial evidence in the record demonstrates noticeable improvement in Plaintiff's impairments. As Defendant correctly points out, diagnostic test results, including CTs of Plaintiff's sinuses as well as treating physician progress notes, repeatedly indicated improvement in Plaintiff's sinusitis. (Tr. 261, 263-64, 271, 279, 280, 293, 296, 305-06, 373, 375, 378, 381, 450, 452.) X-rays of Plaintiff's chest were clear, (Tr. 434, 677.), and spirometry was normal over time, (Tr. 455-66.). Plaintiff's allergist noted on September 21, 2007 that Plaintiff "has had a really good year," and had "not had to go on higher doses of Prednisone for her sinus complaints." (Tr. 463.) He noted further that the medication "controlled her symptoms considerably." (*Id.*) Plaintiff denied "coughing, shortness of breath, or wheezing" on October 26, 2007 and stated that she was "going on a cruise tomorrow and want[ed] to make sure her medications [were] updated and she [was] in good condition." (Tr. 460.) The allergist repeatedly noted that Plaintiff's lungs were clear. (Tr. 455, 458, 460, 463.) Moreover, an ear, nose, and throat specialist noted in February 2005 that Plaintiff's chronic sinusitis was "well-controlled on her current

9

[medication] regimen." (Tr. 283-84.) By late 2007, this specialist noted that Plaintiff had "minimal or no sinus symptoms." (Tr. 452.) Thus, the ALJ did not err in attributing "little weight" to Dr. Fry's April 25, 2007 opinion because it lacked adequate support from objective medical evidence.

Nevertheless, Plaintiff specifically asserts that the ALJ neglected to consider a letter from Dr. Fry dated May 4, 2006 ("May 4, 2006 Letter" or "Letter"). (*See* Docket Entry 11 at 4-5.) Specifically, soon after the alleged disability onset date of April 30, 2006, Dr. Fry's May 4, 2006 Letter opined that Plaintiff was "totally and permanently disabled." (Tr. 326.) However, the Letter noted further that her "chronic medical problems" are "a direct result of working in a contaminated environment." (Tr. 325.) Dr. Fry opined that Plaintiff's sinusitis was "a direct result of workplace exposure to fungal elements like molds and mildews." (*Id.*) Dr. Fry does not opine, as Plaintiff suggests, that Plaintiff can no longer perform her job as a telemarketer. Rather, Dr. Fry states that Plaintiff should "get out of her [contaminated] work environment" as "she can no longer perform her job in her current workplace environment." (Tr. 326.)[8] Plaintiff asserts further that the ALJ neglected to consider Dr. Fry's March 31, 2009 Medical Report associated with Plaintiff's disability retirement ("March 31, 2009 Medical Report" or "Medical Report"). (*See* Docket Entry 11 at 5-6.) This Medical Report, entitled "Medical Report for Disability Re-examination," noted that Plaintiff was permanently "disabled" due to asthma and chronic sinusitis which "cause[d] shortness of breath, fatigue, coughing, and headaches." (Tr. 676-79.). Dr. Fry noted further that Plaintiff was unable "to climb a flight of stairs or walk 100 yards without dyspnea," that is, shortness of breath. (Tr. 678.)

---

[8] Dr. Fry also opined in his May 4, 2006 Letter that Plaintiff's "chronic health conditions" gave rise to her "significant problems with depression and anxiety." (Tr. 326.) Plaintiff does not expressly address depression and anxiety in her brief (Docket Entry 11.). The ALJ found that Plaintiff's depression "is not 'severe' for the reason that it does not significantly interfere with her ability to work." (Tr. 20.) Plaintiff does not expressly contest this finding and there is no indication that the ALJ erred in this regard.

Plaintiff is correct that the ALJ did not specifically address in his decision the May 4, 2006 Letter or the March 31, 2009 Medical Report. However, an ALJ need not provide a written evaluation for each document in the record. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *see also N.L.R.B. v. Beverly Enterprises-Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in this written decision every piece of evidence submitted by a party."). As explained above, the ultimate issue of whether Plaintiff is disabled is administrative and therefore reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled."). Here, while the ALJ did not specifically address the May 4, 2006 Letter and the March 31, 2009 Medical Report in his decision, he clearly considered the opinions offered in these documents. (Tr. 22.) ("The undersigned has considered the medical opinions of all the treating and examining physicians."). Moreover, given that these documents reflected the essence of the April 25, 2007 opinion, which the ALJ assessed at length, the ALJ properly accorded them little weight. In short, Plaintiff's argument that the ALJ failed to properly evaluate Dr. Fry's opinions is without merit because it can be ascertained from the entire record and the ALJ's opinion that the ALJ applied the substance of the treating physician rule.

2. **The ALJ's RFC Formulation Is Supported by Substantial Evidence.**

Plaintiff next challenges the RFC adopted by the ALJ as being unsupported by substantial evidence. (*See* Docket Entry 11 at 6-7.) Specifically, Plaintiff contends that the ALJ erred by failing to properly account for Plaintiff's limitations in speaking and breathing for prolonged periods of time. (*Id.* at 6.) Plaintiff contends further that the ALJ erred in failing to properly consider her chronic

11

fatigue and migraine headaches. (*Id.* at 7.) In challenging the RFC, Plaintiff again takes issue with the ALJ's consideration of Dr. Fry's opinions. These arguments lack merit.

The RFC measures the most a claimant can do despite any physical and mental limitations. *Hines*, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562-63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (*i.e.*, sedentary, light, medium, heavy, or very heavy). *See* 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. *See, e.g.*, *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Diaz*, 55 F.3d at 307. However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ determined that Plaintiff could do "a range of light work as defined in 20 C.F.R. 404.1567(b) except that she can occasionally climb." (Tr. 20.)[9] The ALJ concluded further that Plaintiff was also "restricted from prolonged exposure to concentrations of air

---

[9] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

12

borne pollutants" and "from work at unprotected heights or in the presence of hazardous machinery or equipment." (Tr. 20.) A review of both the ALJ's decision and the record clearly demonstrates that the ALJ not only supported these RFC findings with substantial evidence but also built "an accurate and logical bridge" connecting the two. *Clifford*, 227 F.3d at 872. In short, the ALJ rendered a decision that permits meaningful judicial review and accurately documents substantial evidence supporting the RFC determination.

### A. Speaking and Shortness of Breath

Regarding limitations in speaking and shortness of breath, Plaintiff specifically argues that the ALJ "ignored" without explanation, and in violation of 20 C.F.R. § 1527, Dr. Fry's opinions that her ability to breathe and speak for prolonged periods of time was limited. (*See* Docket Entry 11 at 6-7.) Plaintiff notes that Dr. Fry opined that her speaking and breathing problems arose because "she gets short of breath, coughs, and gets hoarse." (*Id.* at 6 citing Tr. 444.) Plaintiff also points to several other pages in the record for additional support. (Tr. 364.) (allergist opining on August 30, 2006 that "weather changes and hot temperatures during the Summer have caused [Plaintiff] difficulties and shortness of breath"); (Tr. 675-81.) (March 31, 2009 "Medical Report for Disability Re-Examination" opining that Plaintiff's asthma and sinusitis "causes shortness of breath, fatigue, coughing and headaches").

After considering the entire record, the ALJ concluded that Plaintiff had "no limitations in her ability to see, hear or speak," noting further that Plaintiff "alleges disability primarily because of respiratory problems and headaches, and these impairments are not shown by the medical record to impact these areas of functioning." (Tr. 20-21.) As explained in greater detail above, the ALJ clearly considered Dr. Fry's opinions and did not err in according them little weight.

13

Moreover, as Defendant correctly points out, substantial evidence in the record demonstrates noticeable improvement in Plaintiff's asthma and sinusitis. As noted above, the record demonstrates improvements in Plaintiff's sinusitis, minimal or no sinus symptoms, stable asthma, clear chest x-rays, consistently normal spirometry, controlled symptoms with medication, and clear lungs absent wheezing or rhonchi. At times, Plaintiff denied coughing or shortness of breath, hoarseness, chest pain, or prolonged cough. (Tr. 460, 648.) Plaintiff points to no evidence on record, other than the opinion of Dr. Fry, that expressly addresses the allegation that Plaintiff had difficulties in speaking, nor has the undersigned found any in the record. In short, substantial evidence supports the ALJ's RFC assessment, which addresses shortness of breath by limiting Plaintiff to only occasional climbing and no prolonged exposure to concentrations of airborne pollutants. (TR. 20.)

### B. Fatigue and Headache

Plaintiff next argues that the ALJ erred in violation of 20 C.F.R. § 1529 by not evaluating her chronic fatigue and migraine headaches as part of the RFC assessment. (*See* Docket Entry 11 at 7.) This is not so. The record indeed indicates that Plaintiff experienced headaches (Tr. 49-53, 325, 392, 647-49.) and fatigue (Tr. 38-39, 46, 53-54, 325-26, 391-92, 422, 444.). However, the ALJ explicitly took Plaintiff's headaches into account, specifically noting that she "allege[d] disability primarily because of respiratory problems and *headaches*" and noting further that "these impairments [were] not shown by the medical record to impact" Plaintiff's ability to see, hear or speak. (Tr. 20-21.) (emphasis added). The ALJ also took into account the degree of pain Plaintiff testified to experiencing, which would presumably include the pain resulting from migraines, and found that "[t]he objective clinical findings (although not the only factor to be considered) do not support the degree of pain and functional limitations which the claimant alleges." (Tr. 21.)

14

The record further contains substantial evidence that Plaintiff's headaches and fatigue resulted from her asthma and sinusitis, conditions the ALJ explicitly considered in depth. (Tr. 21-22, 291, 297, 392, 395-96, 676, 683.).[10] Consequently, the ALJ implicitly took into account Plaintiff's fatigue. Moreover, while Dr. Fry did opine that Plaintiff suffered from "chronic generalized fatigue" and migraines he attributed these symptoms, as explained above, to the workplace environment. (Tr. 325.) There is also evidence in the record that Plaintiff's migraine headaches were "fairly well-controlled" with medication. (Tr. 392.) By finding Plaintiff could perform only light work with occasional climbing, without prolonged exposure to airborne pollutants, the ALJ addressed Plaintiff's limited ability to perform physical activities in the RFC. (Tr. 20.) In sum, the decision and the record clearly demonstrate that the ALJ supported the RFC findings with substantial evidence and built "an accurate and logical bridge" connecting the two. *Clifford*, 227 F.3d at 872.

**3.     The ALJ Did Not Err in Concluding Plaintiff Could Return to Past Relevant Work.**

Last, Plaintiff challenges the ALJ's findings at step four of the SEP, regarding Plaintiff's ability to return to her past relevant work, arguing that the ALJ violated SSR 82-62. (*See* Docket Entry 11 at 8.) SSR 82-62 requires an ALJ concluding that an individual can perform a past relevant job to include three specific findings of fact regarding: (1) the individual's RFC; (2) the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC would permit a return to her past job. SSR 82-62. Plaintiff bears the burden of showing her inability to work. *Hunter*, 993 F.2d at 35.

Here, the ALJ satisfied these requirements. First, as explained above, the ALJ made factual findings assessing Plaintiff's RFC to permit light work with certain restrictions. (Tr. 20.) Next, in light of the vocational testimony given at the hearing, the ALJ found that Plaintiff was capable of

---

[10] Dr. Fry also indicated that the Prednisone that Plaintiff took "can cause headaches and fatigue." (Tr. 445.)

15

meeting the physical and mental demands of an administrative assistant and telemarketer and could therefore return to her past relevant jobs as they are generally performed. (Tr. 23, 57-61.) Last, the ALJ found that the work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 23.) Plaintiff contends that the ALJ should have gone further and developed the speaking demands of Plaintiff's past work. (Docket Entry 11 at 8.) In support of this contention Plaintiff again points to Dr. Fry's April 25, 2007 opinion that Plaintiff had problems with shortness of breath and hoarseness that impacted her ability to speak for prolonged periods of time. (*Id.* citing Tr. 444.). These contentions lack merit.

As explained above, the ALJ properly accorded Dr. Fry's opinion little weight and did not err by omitting a limitation regarding Plaintiff's ability to speak. (Tr. 20-21.) Because the ALJ did not find that Plaintiff's ability to speak was limited, he was not obliged to consider a speaking limitation at step four. Beyond this, a VE testified that an individual with Plaintiff's RFC could perform past relevant jobs as an administrative assistant and telemarketer. (Tr. 57-61.) Moreover, Plaintiff has not met her burden of proving she was unable to perform her past relevant work. *See Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991) (concluding that "claimant must initially produce relevant evidence of the physical and mental demands of her prior work"). In sum, substantial evidence supports the ALJ's step-four finding that Plaintiff could return to her past work.

Finally, Plaintiff's counsel, Joel W. Davis, with the consent of Plaintiff as well as co-counsel, Benjamin S. Burnside, moves for an order allowing Mr. Davis to withdraw his appearance as counsel. (Docket Entry 15.) In support of this motion, Mr. Davis notes that he is no longer with The Deuterman Law Group, P.A. and notes further that should the instant motion be granted, both co-counsel Burnside and The Deuterman Law Group, P.A. will remain counsel of record and will

16

Case 1:10-cv-00377-WO-JLW   Document 16   Filed 02/05/13   Page 16 of 17

continue to represent Plaintiff in this matter.[11] In light of these representations, the undersigned will grant the instant motion and Joel W. Davis shall be permitted to withdraw as counsel from this action.

## CONCLUSION

In sum, the Court finds that substantial evidence supports the Commissioner's findings and that Plaintiff has failed to show that the ALJ applied an incorrect legal standard in any fashion that prejudiced her.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion for judgment on the pleadings (Docket Entry 10) seeking a reversal of the Commissioner's decision be **DENIED**, that Defendant's motion for judgment on the pleadings (Docket Entry 13) be **GRANTED**, and that this action be dismissed with prejudice.

**IT IS ORDERED** the motion to withdraw as counsel (Docket Entry 15) filed by Plaintiff's counsel, Joel W. Davis is **GRANTED**. The Deuterman Law Group, P.A. and Benjamin S. Burnside will remain counsel of record and continue to represent Plaintiff in this matter.

/s/ Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 5, 2013

---

[11] Local Rule 83.1(e)(1) provides that:

> No attorney who has entered an appearance in any civil or criminal action shall be permitted to withdraw an appearance, or have it stricken from the record, except on order of the Court or when the attorney has provided notice of substitution of counsel by an attorney who is a member of the withdrawing attorney's law firm.

M.D.N.C. Local Rule 83.1(e)(1).